# H. D. LANDIS v. WEST. PENNA. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 3 OF PHILADELPHIA COUNTY.

Argued January 24, 1890—Decided March 31, 1890.

1. Where plaintiff's statement of claim avers a conveyance to the defendant with an agreement by the latter to assume the grantor's duties as trustee, an affidavit of defence averring that said conveyance to defendant was free and discharged from every trust whatsoever, is sufficient to prevent summary judgment on a claim based on defendant's refusal to carry out the alleged agreement.

(*a*) In 1859 a bill was filed to foreclose a mortgage given by the Northwestern R. Co., the decree entered thereon authorizing such bondholders as should become purchasers to pay their bids in bonds. The railroad was purchased by Hirst for certain bondholders, and a master was appointed to report distribution and the form of the conveyance.

(*b*) The master reported that Hirst purchased on behalf of certain bondholders named, not including plaintiff, and of such others as might wish to join in the purchase and pay their proportions of the purchase money and expenses, and that the property was bought to sell again in such manner as three fourths of the bondholders should direct.

(*c*) The master also reported a form of deed to Hirst in which it was recited that it was in trust for all the bondholders. In April, 1860, in pursuance of the direction of three fourths of the bondholders, Hirst conveyed to the West. Penna. R. Co., organized by the purchasing bondholders to succeed the N. R. Co., " free and discharged from all and every trust whatsoever."

(*d*) The act incorporating the W. P. R. Co. recited that said company was composed of persons named, and " all others who hold mortgage bonds," but the preamble set out the deed to Hirst " in trust for all the bondholders who participated in the said purchase," and that it was desirable " to reimburse the said bondholders for their expenditure of money and labor."

(*e*) In 1889, the plaintiff, as surviving partner discovered among the assets of the firm, a N. R. Co. bond, which by its terms was convertible into stock, and brought assumpsit against the W. P. R. Co. to recover for their refusal to exchange said bond into stock of the W. P. R. Co.

(*f*) Plaintiff claimed that Hirst took as trustee for all the bondholders of the N. R. Co. and that the conveyance to the W. P. R. Co. was really with the agreement that said company assumed Hirst's duties as such trustee, and that the W. P. R. Co. was therefore bound to make the exchange demanded:

2. In such case, it was clear, from a consideration of the foreclosure de-

cree, the deeds to and from Hirst, the master's report and the act incorporating the W. P. R. Co., that the plaintiff had merely an option to participate in the new venture, by coming in within a reasonable time and sharing in the expenses and risk.

3. Hirst's duty, notwithstanding general expressions in the deeds and the act of assembly, was to distribute stock to such bondholders as participated in the original purchase or subsequently exercised their option to come in, and the last chance to exercise such option was when the deed was made to the W. P. R. Co. clear of all trusts.

Before Paxson, C. J., Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 53 January Term 1890, Sup. Ct.; court below, No. 164 March Term 1889, C. P. No. 3.

On April 11, 1889, H. D. Landis, who survived William Dilworth, S. Branson, and James Vance, trading as Dilworth, Branson & Co., brought assumpsit against the Western Pennsylvania R. Co. to recover damages for the failure to deliver, on demand, its own stock equal to the amount of a bond and coupons of the Northwestern R. Co. tendered by the plaintiff in exchange, under an alleged agreement by defendant, who was the successor of the Northwestern R. Co. to issue its own stock to the holders of the bonds of the said Northwestern R. Co.

To the plaintiff's statement of claim filed August 29, 1889, the defendant filed an affidavit of defence, the facts shown by both sufficiently appearing in the opinion of this court, and on October 2, 1889, the court below, without opinion filed, made absolute a rule for judgment for want of a sufficient affidavit of defence. Judgment for the plaintiff having been liquidated at $1,451.90, the defendant took this appeal assigning the order entering judgment in favor of the plaintiff, for error.

*Mr. David W. Sellers*, for the appellant.

That the bond held by the plaintiff was a lien only on the fund arising from the sale, counsel cited: West Br. Bank v. Chester, 11 Pa. 292; Commonwealth v. Railroad Co., 122 Pa. 320. That the plaintiff was barred: Hamilton v. Hamilton, 18 Pa. 20; Wagner v. Baird, 7 How. 234; Cope v. Humphreys, 14 S. & R. 15; Foulk v. Brown, 2 W. 214; Diemer v. Sechrist, 1 P. & W. 419; Ankeny v. Penrose, 18 Pa. 192; Pryor v. Wood, 31 Pa. 148; Potter's Est., 54 Pa. 465; Reed v. Reed, 46 Pa. 239; Commonwealth v. Snyder, 62 Pa. 157.

Opinion of the Court.

*Mr. Alex. Simpson, Jr.*, for the appellee.

That the protection of the statute of limitations was not claimed in the affidavit of defence, and therefore could not be asserted, counsel cited: Heath v. Page, 48 Pa. 130; Wilson v. Hayes, 18 Pa. 354; Wesner v. Stein, 97 Pa. 322. Moreover, the claim was not barred: Phila. etc. R. Co. v. Cowell, 28 Pa. 330; Overton v. Tracey, 14 S. & R. 311.

OPINION, MR. JUSTICE MITCHELL:

Plaintiff brought assumpsit against defendant for failure to deliver, on demand, its own stock equal to the amount of a bond and coupons of the Northwestern Railroad Company tendered by plaintiff in exchange. To establish the duty of defendant to make this exchange, plaintiff set out in his statement the bond of the Northwestern company, the proceedings on the mortgage whereby said bond was secured, the sale of the railroad to William L. Hirst as trustee for the bondholders, the incorporation of defendant company, and the conveyance by Hirst to it, with an agreement by the defendant to assume Hirst's duty as trustee to issue its stock to the holders of the said bonds. This last is the essential averment. Without it, there is no duty upon the defendant in regard to the plaintiff, and therefore no cause of action. Turning now to the affidavit of defence, we find it following closely the line of plaintiff's title, but setting out the written instruments more fully according to their tenor, and concluding with the specific and positive averment that the conveyance by Hirst to defendant was "free and discharged from all and every trust and trusts whatsoever." This denied the essential fact on which plaintiff's right to recover rested, and established a good defence. It is not necessary now to consider the difficulties in plaintiff's way in proving the alleged agreement between Hirst and defendant, in the face of Hirst's deed free and discharged of all trusts, nor whether the agreement, if proved, would amount to a trust which would run indefinitely, or only to an undertaking which would be barred by the statute of limitations. It is sufficient, on this branch of the case, that the agreement was denied, and the burden of proving it was on the plaintiff. This was enough to prevent judgment.

But the judgment is open to a still more serious objection.

Opinion of the Court.

The plaintiff's cause of action is fatally defective throughout, in assuming that he is entitled to come in now and make the desired exchange of bonds for stock. An examination of the documents and proceedings on which his claim is founded makes this quite clear. In 1859, the interest on the bonds of the Northwestern Railroad Company not being paid, a bill was filed in this court to foreclose the mortgage, and under a decree upon this bill a sale was made of the road, and a deed to Hirst, who was the purchaser for the price of $16,000. The sale discharged the lien of the mortgage and the bonds secured by it, and all that ordinarily would have remained to plaintiff was the right to his proportionate share of the proceeds. But the decree under which the sale was made allowed the bondholders, who should become purchasers, the privilege of using their bonds in payment of the purchase money, and thus becoming the owners of the road itself. Hirst bought as attorney and trustee for such bondholders. Plaintiff's case is founded on the assumption that Hirst became trustee for all the bondholders, without exception, and therefore including plaintiff. But this is unsupported either by the intent of the parties, the tenor of the decree, or the effect of the proceedings. The bill was a general creditors' bill, filed by certain bondholders for themselves and such others as might choose to come in. The decree provided that, "in case any of the holders of the bonds or coupons, . . . secured by said mortgage, . . . shall become purchasers, by themselves or with others, of the said premises at the said sale, that then the said holders . . . . shall be and they are hereby authorized to make payment of the price or purchase money bid by them at the said sale, either in whole or in part, except the sum of $1,000 hereinafter mentioned, by transferring and delivering to the said trustees . . . . . the bonds or coupons the said purchaser may then hold, or by receipting on the same for the amount that may be so bid." Plaintiff's legal right was to take his share of the proceeds. He could not be forced to do anything else, nor did the decree attempt to make him do so. It simply gave him, with the others, an option to come in as a purchaser, if he chose. Plaintiff was not party to the bill. There is no claim that Hirst in fact represented him; on the contrary, it is averred that he was in ignorance of the whole matter until long afterwards. He was not, therefore,

one of the purchasers, and could not have complained if he
had been thereafter excluded. The intention of the parties is
shown clearly by the report of the master, September 29, 1859,
after the sale, and before the making of the deed to Hirst. He
reports that Hirst had purchased the mortgaged premises on
behalf of certain bondholders named, and such others "as
might signify to him their desire to become interested in said
purchase, and pay him their due proportion of the sum or price
which should be bidden for the same, and of the costs of suit
and other expenses;" and, further, that the purchase had been
made with the intention to sell again, and that at a meeting of
the bondholders it had been agreed that the holders of three
fourths in amount of the bonds should have power to order a
sale and conveyance by Hirst at such time, place, and manner,
and on such terms, as they should think proper; and "it was
submitted to me," the master continues, "that it was not just
or reasonable that their intention in making the purchase
should be defeated by the neglect, default, or refusal of other
persons, holding not more than one fourth in amount of said
bonds, and especially because the just rights and interest of all
the holders of said bonds would be fully satisfied by the pay-
ment to them of their due proportion of the proceeds of such
sale, according to the intention of those of the bondholders
who expressly authorized and directed the purchase." The
master says, "I have adopted this view of the question," and
he reports a form of deed to Hirst which was approved by the
court, and the deed was so made by the trustees. In it the
conveyance to Hirst is in trust for all the owners of the bonds;
and plaintiff's claim that, under this clause, he had still the
privilege of coming in, might, probably, have been sustainable,
if this clause had stood alone. But the fact that some holders,
by "neglect, default, or refusal," would not or did not come
in, had been considered, as shown by the master, and the trust
for all was expressly subject to the direction that Hirst should
sell when ordered by three fourths. In April, 1860, in pursu-
ance of such order by the holders of three fourths of the bonds,
Hirst sold to defendant, "free and discharged from all and
every trust and trusts whatsoever." Nor is the effect of this
deed changed by the act of March 22, 1860, P. L. 322, incor-
porating the defendant company; for, though the language is

general,—that the persons named, and "all other persons who hold mortgage bonds," are made a corporation,—yet the preamble recites the deed to Hirst "in trust for all the bondholders *who participated in the said purchase*," and then proceeds, "and it is desirous [desirable] that the said railroad should be completed, as well for the development of the resources of that portion of the commonwealth . . . . . as also *to reimburse the said bondholders for their expenditure of money and labor*, therefore," etc.   It is plain that the general words of the act were not intended to go beyond the purpose indicated, but to refer, as the master's report, the decree in equity, and the deed to Hirst had done before, to such holders only as should elect to come into the new scheme.   As already said, the bondholders had a right to take their share of the proceeds of the sale, and neither the decree of the court nor the act of assembly could compel them to come into the new venture; nor did either attempt to do so.   What the plaintiff had throughout, was not an absolute right of property in the stock of the new corporation, irrespective of his own action, but an option, to be exercised or not at his own choice, and, of course, to be exercised, if at all, within such reasonable time as would avoid prejudice to the rights of the others.   In an action at law, it is sufficient to say that his option was never exercised at all.   His statement fails to show that his demand for the stock of defendant was accompanied by a tender or offer of payment of his share of the expenses, etc.   But, even if it had been, it would have been years too late.   The defendant company was a new venture in 1859.   It originated among the bondholders of the insolvent Northwestern railroad; and they all had an equal chance to contribute their bonds, pay the expenses, and assume the responsibilities of the new undertaking.   The duty of Hirst himself, as trustee to distribute stock, was only to those stockholders who were actually parties to the purchase, and such as should subsequently come in; and, even if the defendant did undertake, as the statement avers, to make the distribution of stock for Hirst, it could have been only to those who had manifested their intention to participate, and the very last moment for the exercise of their option to do so, was when the deed was made from Hirst to the defendant, clear of all trusts, and the new venture was thus started.   Plaintiff's right to

anything more than his share of the purchase money certainly ended then, if not before. That his firm at that time overlooked the ownership of the bond, or were unaware of the proceedings, is his misfortune; but it gives him no right to come in now, after thirty years, and claim any portion of the result which the capital and labor and risk of the others have produced. There is no ground in law or equity upon which such a claim can be sustained.

Judgment reversed.

On May 5, 1890, motion for re-argument was refused.